IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WILLIAM MEJIA, on behalf of himself and those similarly situated, | * * * | Civil Action No. 2:24-cv-06684-SRC-JBC |
| Plaintiffs, | * | |
| v. | * | |
| ALLIED AVIATION SERVICES, INC., ABC CORPS. 1-10 (fictitious parties), and JOHN/JANE DOES 1-10 (fictitious parties), | * * | |
| Defendant. | * | |

**DECLARATION OF WILLIAM MEJIA IN SUPPORT OF
MOTION FOR CONDITIONAL CERTIFICATION**

I, William Mejia, hereby declare under penalty of perjury that the following is true and correct:

1. I am an adult resident of Elizabeth, New Jersey. I make this Declaration based on my own personal knowledge and experience.

2. Allied Aviation provided fueling services for the commercial aviation industry at various airports.

3. I worked as a Fueling Supervisor/Dispatcher for Defendant Allied Aviation ("Allied Aviation") from 2004 through August 2023 at its facilities in and around Newark Liberty International Airport ("Newark Airport") in New Jersey.

4. Allied Aviation also provides fueling services at approximately 9 other airports across the United States, including JFK, Laguardia, and numerous other airports along the East Coast, Texas, and California. Attached hereto as

1

**Exhibit A** is a true copy of a screenshot from Allied Aviation's website showing the numerous airports at which Allied Aviation provides services.

5. During my employment, Allied Aviation had approximately 20-35 Fueling Supervisors/Dispatchers on staff at all times at Newark Airport ("Newark Airport") during any given year (except for a brief period during the COVID-19 global pandemic when commercial flights were reduced). Due to turnover, I believe there were at least 40 Fueling Supervisors/Dispatchers who worked at Newark Airport over the course of the class period, as well as many others who worked at other airports across the country.

6. All of the Fueling Supervisors/Dispatchers had similar responsibilities. We assigned fueling employees to perform fueling services on specific planes and airlines, and we monitored their work to ensure the proper completion of each job ticket (fueling request).

7. While I worked for the company, Allied Aviation's office was located at Building 116 on Fuel Farm Road in Elizabeth, New Jersey ("Allied's Main Office"). This facility is located on a property adjacent to Newark Airport.

8. As part of Allied Aviation's services to fuel the airplanes, the Fueling Supervisors/Dispatchers were required to be on site at a remote Allied Aviation office located inside Newark Airport at Terminal C, Gate 80, Lower Level ("Allied's Remote Facility").

9. There were three scheduled shifts per day for the Fueling Supervisors/Dispatchers at the Allied Remote Facility located at Terminal C. The morning shift was 5:00 a.m. to 1:00 p.m. (but we actually worked at least 4:30 a.m. to 1:30 p.m.) The afternoon shift was from 1:00 p.m. to 9:00 p.m. (but we actually worked 12:30 p.m. to 9:30 p.m.) The midnight shift was from 9:00 p.m. to 5:00 a.m. (but we actually worked 8:30 p.m. to 5:30 a.m.) Each shift was scheduled to be 8 hours and did not include any break for a meal.

10. Numerous Fueling Supervisors/Dispatchers worked during each shift.

11. During my tenure at Allied Aviation, I worked during all three shifts at various times, but I primarily worked the afternoon shift immediately prior to my separation from the company.

12. To my knowledge, Allied Aviation considered me and the other Fueling Supervisors/Dispatchers to be non-exempt employees. I was paid on an hourly basis. My paystubs from Allied Aviation clearly show that my basis of pay was hourly and that I received pay for only 40 hours each workweek, without receiving any overtime pay. Attached hereto as **Exhibit B** is a true copy of several of my paystubs.

13. However, Allied Aviation required the Fueling Supervisors/Dispatchers to work well above 40 hours per workweek without overtime pay. During my employment, Allied Aviation had a policy to pay Fueling Supervisors/Dispatchers only for their scheduled 8-hour shifts even though Allied Aviation required us to arrive at Allied's Main Office at least 30 minutes before our scheduled shifts, to work through lunch, and to stay at least 30 minutes after our scheduled shifts.

14. For example, because the morning-to-afternoon shift change occurred at 1:00 p.m., the afternoon Fueling Supervisors/Dispatchers were required to arrive at Allied's Main Office by 12:30 p.m. in order to complete paperwork and administrative tasks and then travel to Allied's Remove Facility in time to relieve the outgoing morning Fueling Supervisors/Dispatchers at 1:00 p.m.

15. *Before* our scheduled shift times, we were required to attend meetings, receive instructions and paperwork from the duty managers and other management personnel, and pick up a company vehicle and travel in it from Allied's Main Office to Allied's Remote Facility inside Newark Airport, which also involved time spent waiting to pass through Newark Airport's security checkpoints.

16. *After* our scheduled shifts on site at Allied's Remove Facility inside Newark Airport, the Fueling Supervisors/Dispatchers had to then drive the company vehicle from Allied's Remote Facility back to Allied's Main Office. Once we arrived back to Allied's Main Office, we had to complete additional work, such as preparing reports and other paperwork for the company, settling job tickets, and handling other communications to Allied Aviation personnel.

17. Allied Aviation routinely required the Fueling Supervisors/Dispatchers to perform these duties outside their scheduled shifts. These extra duties benefited Allied Aviation. Allied Aviation required us to complete the reports and other paperwork so it could bill its customers, the airlines operating out of the airports.

3

18. Allied Aviation also had a policy that required the Fueling Supervisors/Dispatchers to work through their shifts (and the extra hour each day) without a meal break.

19. Additionally, during times of inclement weather and related flight delays, the Fueling Supervisors/Dispatchers on duty were required to stay past their scheduled shift times in order to complete job tickets.

20. Also, if a Fueling Supervisor/Dispatcher scheduled to work the subsequent shift called out sick, Allied Aviation would require the Fueling Supervisor/Dispatcher from the prior shift to continue working for another 8 hours (17 hours total in one day) without a meal break.

21. We never received overtime pay at the rate of 1.5 times our regular hourly wages.

22. In fact, Allied Aviation's policy was not to pay anything at all to the Fueling Supervisors/Dispatchers for work performed before and after our shifts *unless* the extra work exceeded two hours.

23. In other words, even though our work hours exceeded 40 hours per workweek, if the work before/after our shifts was less than two hours (which it often was), Allied Aviation did not pay us anything extra.

24. Even when extra work exceeded a two-hour block of time, Allied Aviation only paid a flat rate based on our regular hourly rates, *not* time-and-a-half.

25. Other Fueling Supervisors/Dispatchers worked during the same shifts that I did. From what I observed and experienced, Allied Aviation also required other Fueling Supervisors and Dispatchers to work through lunch and to work before and after their scheduled shifts without overtime pay.

26. The other Fueling Supervisors/Dispatchers and I generally worked at least five hours of unpaid overtime *every workweek* in excess of 40 hours, comprised of 30 minutes worked each day before our scheduled shifts and 30 after our scheduled shifts.

4

27. Allied Aviation controlled our day-to-day working conditions, including dictating the uniforms we wore, the lengths of our shifts, and the manner in which we performed our duties.

28. The Fueling Supervisors and Dispatchers did *not* have the authority to hire or fire anyone, to determine rates of pay, to discipline other employees, to maintain employee records, or to establish policies or work conditions.

29. It is my understanding, based on my conversations with other Fueling Supervisors/Dispatchers, that Allied Aviation required all Fueling Supervisors/Dispatchers to work before and after their scheduled shifts without overtime pay of 1.5 times their regular hourly wages and, when the extra work did not exceed two hours at a time, Allied Aviation did not pay them at all for the time.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 21st day of February, 2025

_william mejia 02/20/2025_
William Mejia

# EXHIBIT A




LOCATIONS




Please Select a Location:



# EXHIBIT B

12:29  5G UC 80%

## Statement for Jul 14, 2021

Taxable Marital Status: Single
Exemptions/Allowances:
  Federal: 1
  NJ: 1,Table A

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 28.0880 | 40.00 | 1,123.52 | 27,638.62 |
| Supv Extra | | | 255.00 | 890.00 |
| Hol 2.5 | | | | 2,247.04 |
| Holiday | | | | 224.70 |
| Sick | | | | 674.10 |
| Vacation | | | | 2,247.04 |
| **Gross Pay** | | | **$1,378.52** | 33,921.50 |

| Deductions | | this period | year to date |
|---|---|---|---|
| **Statutory** | | | |
| Federal Income Tax | | -159.95 | 3,449.63 |
| Social Security Tax | | -78.01 | 1,894.29 |
| Medicare Tax | | -18.24 | 443.02 |
| NJ State Income Tax | | -51.28 | 1,152.95 |
| NJ SUI Tax | | -5.86 | 144.17 |
| NJ SDI Tax | | -6.48 | 159.43 |
| NJ Paid Family Leave Ins | | -3.86 | 94.98 |
| **Other** | | | |
| Dental | | -20.77* | 581.56 |
| Medical | | -97.83* | 2,739.24 |
| Vision | | -2.59* | 72.52 |
| **Net Pay** | | **$933.65** | |
| Checking 1 | | -333.65 | |
| Checking 2 | | -500.00 | |
| Savings 1 | | -100.00 | |
| **Net Check** | | **$0.00** | |

ALLIED AVIATION SERVICES INC.
266 WEST 37TH STREET, 3RD FLOOR SUITE 302
NEW YORK, NY 10018

Deposited to the account of
WILLIAM MEJIA



< 1 / 1 >

12:20

# Statement for Jan 11, 2023

```
CO.   FILE   DEPT.   CLOCK   VCHR. NO.  030
C1P   018733 OMGTPA  160                    1
```

ALLIED AVIATION SERVICES INC.
256 WEST 37TH STREET, 3RD FLOOR SUITE 302
NEW YORK, NY 10018

**Earnings Statement**    ADP

| Period Beginning: | 01/02/2023 |
| Period Ending: | 01/08/2023 |
| Pay Date: | 01/11/2023 |

Taxable Marital Status: Single
Exemptions/Allowances:
  Federal:  1
  NJ:  1, Table A

WILLIAM MEJIA

### Earnings

| | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 30.6942 | 40.00 | 1,227.77 | 2,209.98 |
| Supv Extra | | | 270.00 | 360.00 |
| Hol 2.5 | | | | 613.00 |
| **Gross Pay** | | | **$1,497.77** | 3,183.86 |

Your federal taxable wages this period are $1,372.54

### Other Benefits and Information

| | this period | total to date |
|---|---|---|
| Gli | 1.39 | 2.78 |

### Deductions

**Statutory**

| | this period | year to date |
|---|---|---|
| Federal Income Tax | -171.31 | 364.05 |
| Social Security Tax | -85.18 | 182.04 |
| Medicare Tax | -19.92 | 42.57 |
| NJ State Income Tax | -58.89 | 130.96 |
| NJ SUI Tax | -6.36 | 13.53 |
| NJ Paid Family Leave Ins | -0.90 | 1.91 |

**Important Notes**
CO PHONE: 941-349-0622

BASIS OF PAY: HOURLY

**Other**

| | this period | year to date |
|---|---|---|
| Dental | -20.14* | 40.28 |
| Medical | -102.50* | 205.00 |
| Vision | -2.59* | 5.18 |
| **Net Pay** | **$1,029.98** | |
| Checking 1 | -429.98 | |
| Checking 2 | -500.00 | |
| Savings 1 | -100.00 | |
| **Net Check** | **$0.00** | |

* Excluded from federal taxable wages

ALLIED AVIATION SERVICES INC.
256 WEST 37TH STREET, 3RD FLOOR SUITE 302
NEW YORK, NY 10018

Advice number: 
Pay date: 01/11/2023

Deposited to the account of WILLIAM MEJIA

| account number | transit ABA | amount |
|---|---|---|
| XXXX XXXX | | $429.98 |
| XXXX XXXX | | $500.00 |
| XXXX XXXX | | $100.00 |

THIS IS NOT A CHECK

**NON-NEGOTIABLE**



1 / 1

12:15  📧                                     5G UC 📶 75%

# Statement for Jun 28, 2023                    ⋮

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | 030 |
|---|---|---|---|---|---|
| C1P | 016733 | 0MGTPA | 160 | | 1 |

ALLIED AVIATION SERVICES INC.
266 WEST 37TH STREET, 3RD FLOOR SUITE 302
NEW YORK, NY 10018

**Earnings Statement**           ADP

| Period Beginning: | 06/19/2023 |
|---|---|
| Period Ending: | 06/25/2023 |
| Pay Date: | 06/28/2023 |

Taxable Marital Status: Single
Exemptions/Allowances:
Federal: 1
NJ: 1,Table A

**WILLIAM MEJIA**

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 31.6149 | 40.00 | 1,264.60 | 27,951.36 |
| Supv Extra | | | 90.00 | 1,530.00 |
| Bonus | | | | 750.00 |
| Hol 2.5 | | | | 2,473.94 |
| Sick | | | | 1,004.31 |
| Vacation | | | | 2,529.20 |
| **Gross Pay** | | | **$1,354.60** | 36,238.81 |

Your federal taxable wages this period are $1,229.37

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Gli | 1.59 | 39.14 |

| | |
|---|---|
| Ytd Sick Used | 32.00 |
| Ytd Vac Used | 80.00 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -139.82 | 3,859.46 |
| | Social Security Tax | -76.32 | 2,047.36 |
| | Medicare Tax | -17.85 | 478.82 |
| | NJ State Income Tax | -49.82 | 1,364.80 |
| | NJ SUI Tax | -5.75 | 154.01 |
| | NJ Paid Family Leave Ins | -0.81 | 21.74 |
| | Other | | |
| | Dental | -20.14* | 523.64 |
| | Medical | -102.50* | 2,665.00 |
| | Vision | -2.59* | 67.34 |
| | **Net Pay** | **$939.00** | |
| | Checking 1 | -339.00 | |
| | Checking 2 | -500.00 | |
| | Savings 1 | -100.00 | |
| | **Net Check** | **$0.00** | |

**Important Notes**
CO PHONE: 941-349-0622

BASIS OF PAY: HOURLY

\* Excluded from federal taxable wages

ALLIED AVIATION SERVICES INC.
266 WEST 37TH STREET, 3RD FLOOR SUITE 302
NEW YORK, NY 10018

| Advice number: | |
|---|---|
| Pay date: | 06/28/2023 |

Deposited to the account of
WILLIAM MEJIA

| account number | transit | ABA | amount |
|---|---|---|---|
| | XXXX | XXXX | $339.00 |
| | XXXX | XXXX | $500.00 |
| | XXXX | XXXX | $100.00 |

THIS IS NOT A CHECK

**NON-NEGOTIABLE**

<    1 / 1    >

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | 030 |
|-----|------|-------|-------|-----------|-----|
| C1P | 016733 | 0MGTPA | 160 | | 1 |

# Earnings Statement 

ALLIED AVIATION SERVICES INC.
266 WEST 37TH STREET, 3RD FLOOR SUITE 302
NEW YORK, NY 10018

Period Beginning: 08/21/2023
Period Ending: 08/27/2023
Pay Date: 08/30/2023

Taxable Marital Status: Single
Exemptions/Allowances:
  Federal: 1
  NJ: 1,Table A

WILLIAM MEJIA

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 31.6149 | 40.00 | 1,264.60 | 37,562.32 |
| Bonus | | | | 750.00 |
| Hol 2.5 | | | | 3,106.24 |
| Sick | | | | 1,257.23 |
| Supv Extra | | | | 2,245.00 |
| Vacation | | | | 3,793.80 |
| **Gross Pay** | | | **$1,264.60** | 48,714.59 |

Your federal taxable wages this period are $1,139.37

| Other Benefits and Information | this period | total to date |
|-------------------------------|-------------|---------------|
| Gli | 1.59 | 53.45 |
| Ytd Sick Used | | 40.00 |
| Ytd Vac Used | | 120.00 |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -120.02 | 5,180.40 |
| | Social Security Tax | -70.74 | 2,751.87 |
| | Medicare Tax | -16.54 | 643.58 |
| | NJ State Income Tax | -44.33 | 1,832.99 |
| | NJ Paid Family Leave Ins | -0.76 | 29.23 |
| | NJ SUI Tax | | 174.68 |

**Important Notes**
CO PHONE: 941-349-0622

BASIS OF PAY: HOURLY

| Other | | |
|-------|---|---|
| Dental | -20.14* | 704.90 |
| Medical | -102.50* | 3,587.50 |
| Vision | -2.59* | 90.65 |
| **Net Pay** | **$886.98** | |
| Checking 1 | -286.98 | |
| Checking 2 | -500.00 | |
| Savings 1 | -100.00 | |
| **Net Check** | **$0.00** | |

* Excluded from federal taxable wages

---

ALLIED AVIATION SERVICES INC.
266 WEST 37TH STREET, 3RD FLOOR SUITE 302
NEW YORK, NY 10018

Advice number:
Pay date: 08/30/2023

Deposited to the account of
WILLIAM MEJIA

THIS IS NOT A CHECK

| account number | transit ABA | amount |
|----------------|-------------|--------|
| | XXXX XXXX | $286.98 |
| | XXXX XXXX | $500.00 |
| | XXXX XXXX | $100.00 |

**NON-NEGOTIABLE**