Lisa M. Casa, Esq.
Gregory S. Lisi, Esq.
FORCHELLI DEEGAN TERRANA LLP
333 Earle Ovington Boulevard, Suite 1010
Uniondale, New York 11553
(516) 248-1700
lcasa@forchellilaw.com
glisi@forchellilaw.com
*Attorneys for Defendant*
*Allied Aviation Services, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

-------------------------------------------------------------X

| | |
|---|---|
| WILLIAM MEJIA, on behalf of himself and those similarly situated, | Civil Action No. 2:24-cv-06684(SRC)(JBC) |
| Plaintiff, | **RETURN DATE: April 21, 2025** |
| -against- | |
| ALLIED AVIATION SERVICES, INC., ABC CORPS. 1-10 (fictitious parties) and JOHN and JANE DOES 1-10 (fictitious parties), | |
| Defendant. | |

-------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION UNDER FLSA §216**

On the Brief:
Gregory S. Lisi, Esq.
Lisa M. Casa, Esq.

Forchelli Deegan Terrana LLP
*Attorneys for Defendant*
333 Earle Ovington Blvd., Suite 1010
Uniondale, New York 11553

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

**LEGAL ANALYSIS** ..................................................................................................... 6

   **I.    CONDITIONAL CERTIFICATION SHOULD BE DENIED BECAUSE THE PROPOSED COLLECTIVE CONSISTS OF EMPLOYEES WHO ARE EXEMPT FROM RECEIVING OVERTIME.** ................................................................. 6

     **A.    Fueling Supervisors Are Exempt Executives.** ............................................. 7

       **1.    Plaintiff's Primary Duty Was to Manage the Enterprise and Its Employees.** .... 8

       **2.    Fueling Supervisors Customarily and Regularly Direct the Work of 2 Or More Employees.** ...................................................................................... 9

       **3.    The Fueling Supervisors Have the Ability to Recommend Disciplinary Action.** 9

     **B.    Fueling Supervisors Are Exempt Under The Administrative Exemption.** ............ 10

       **1.    Fueling Supervisors Were Engaged in Non-Manual Work Directly Related to the Management and General Business Operations of Allied and Allied's Airline Customers.** ................................................................................ 10

       **2.    Fueling Supervisors Exercise Independent Judgment and Discretion.** ............. 11

     **C.    Fueling Supervisors Are Exempt Under The Mixed Exemption.** ........................ 11

   **II.    PLAINTIFFS' BOILERPLATE AFFIDAVITS DO NOT SATISFY THE STANDARD TO MEET CONDITIONAL CERTIFICATION.** ...................................... 12

   **III.    THE PURPORTED OFF THE CLOCK WORK AND MEAL BREAK REQUIRES AN INDIVIDUALIZED INQUIRY.** .................................................... 13

   **IV.    PLAINTIFF DOES NOT OFFER TESTIMONY TO ALLIED'S PRACTICES AFTER 2023.** ...................................................................................... 15

CONCLUSION ............................................................................................................ 15

**CERTIFICATE OF SERVICE** ................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Asirifi v. W. Hudson Sub-Acute Care Ctr., LLC*,
2014 WL 294886 (D.N.J. Jan. 24, 2014) ................................................................. 13

*DiFlavis v. Choice Hotels Int'l, Inc.*,
2020 WL 610778 (E.D. Pa. Feb. 6, 2020) ................................................................ 13

*Ferreras v. Am. Airlines, Inc.*,
946 F.3d 178 (3d Cir. 2019) ..................................................................................... 14

*Helix Energy Solutions Grp. v. Hewitt*,
598 U.S. 39 (2023) ....................................................................................................... 8

*Hudson v. Absecon Emergency Servs., Inc.*,
2016 WL 5329593 (D.N.J. Sept. 22, 2016) ............................................................... 8

*Lambert v. Jariwala & Co., LLC*,
2023 WL 1883354 (D.N.J. Feb. 10, 2023) ............................................................... 12

*Minshou Lin v. Fada Grp. Inc*,
2021 WL 423757 (D.N.J. Feb. 4, 2021) ..................................................................... 7

*Mitchell v. Covance, Inc.*,
438 F. Supp. 3d 341 (E.D. Pa. 2020) ......................................................................... 6

*Pearsall-Dineen v. Freedom Mortg. Corp.*,
27 F. Supp. 3d 567 (D.N.J. 2014) .............................................................................. 7

*Reed v. Empire Auto Parts, Inc.*,
2015 WL 761894 (D.N.J. Feb. 23, 2015) ............................................................ 12, 14

*Rogers v. Ocean Cable Grp. Inc.*,
2011 WL 6887154 (D.N.J. Dec. 29, 2011) ............................................................... 13

*Symczyk v. Genesis HealthCare Corp.*,
656 F.3d 189 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013) ............... 7

*Tan v. PKLL Inc.*,
2024 WL 1673352 (D.N.J. Apr. 18, 2024) ................................................................. 7

**Statutes**

29 U.S.C. §213 ................................................................................................................ 7

**Regulations**

29 C.F.R. § 541.102 ........................................................................................................ 9

29 C.F.R. § 541.201 ........................................................................................................11

29 C.F.R. § 541.700(a) .................................................................................................... 8

29 C.F.R. § 541.708 ...................................................................................................... 12

29 C.F.R. 541.200 .......................................................................................................... 10

29 C.F.R. 541.602(a) ...................................................................................................... 8

<u>PRELIMINARY STATEMENT</u>

Allied Aviation Services of New Jersey, Inc. ("Allied") manages the into-plane fueling operations at Newark Liberty International Airport ("EWR") for over 50 major airlines. Plaintiff, William Mejia ("Mejia" or "Plaintiff"), and opt-in plaintiffs, Todd Moskowitz and Jose Fernandez (collectively, "Plaintiffs"), worked at Allied's EWR operation as Fueling Supervisors/Dispatchers. In this position, Plaintiffs were tasked with overseeing Allied's hourly unionized fueling employees. Plaintiffs did not fuel jet planes and were tasked with the crucial role of coordinating Allied's fuelers to ensure the commercial aircraft moving in and out of EWR were ready to depart on-time. Given this crucial role, Plaintiffs were paid an annual salary and are exempt under the Fair Labor Standards Act ("FLSA") and New Jersey Wage Payment Law ("NJWPL"). This was confirmed by the NJDOL in 2016 who entered a no violation finding following an audit of Allied's pay practices for its Fueling Supervisors.

Despite their exempt status, Plaintiffs, over two years after leaving Allied, now seek to conditionally certify a class of other Fueling Supervisors/Dispatchers from June 2021 to present. Plaintiffs base the entirety of their argument on the allegation – without any support – that they were denied overtime despite having to report 30 minutes before their scheduled shift and having to stay 30 minutes after their scheduled shift, and were required to work through their paid lunch break. This argument just does not hold up nor demonstrate that Allied had a common policy or scheme to deprive these exempt supervisors from overtime. Even under the lenient threshold set for conditional certification, the boilerplate statements provided by Plaintiffs do not even meet the threshold to demonstrate a factual nexus between any purported Allied policy depriving them from overtime.

1

Plaintiffs are exempt from overtime under the NJWPL and confirmed by the NJDOL. Thus, they are not entitled to overtime.

Additionally, the type of violation they allege – off the clock work—even if a valid claim, requires a type of individualized inquiry that is not appropriately considered on a collective wide basis. Further, the proposed time period of June 2021 to present, encompasses time that is prior to the FLSA's three-year statute of limitations, and almost two years after Plaintiffs left Allied in 2022 and 2023. Accordingly, even if permitted, any collective should be limited to 2022 to 2023. Given the above, Plaintiffs' request for conditional certification should be rejected by this Court.

## FACTUAL BACKGROUND

Allied is a fuel services company, which pumps jet fuel into commercial airplanes, maintains the jet fuel farm where fuel is stored and maintains the equipment that helps Allied transport the fuel and put such fuel into the commercial jets at EWR.[1] Allied is the only fuel services company at EWR, servicing 50 common air carriers.[2] As such, Allied's job is vital to the smooth operation of EWR, and by relation, to commercial airlines all over the country.

EWR consists of five separate terminals: A, B, C, International and Cargo. Allied's operations are based out of a building at the southern end of the airport, which includes offices, a garage and fuel storage facility. Allied also has offices at terminals "A" and "C." The Fueling Supervisors are provided with free parking at Allied's facility.[3]

Allied is responsible for dispensing between 2 and 3 million gallons of fuel each day.[4] This fuel is dispensed by tanker trucks and a tank farm consisting of 35 miles of pipes.[5] Fueling is

---

[1] *See* Declaration of Rory McCormack dated April 4, 2025 ("McCormack Dec.") at ¶2.
[2] *See Id.*
[3] *See Id.* at ¶3.
[4] *See Id.* at ¶4.
[5] *See Id.*

conducted by Allied's fuelers.[6] The Tank Farm Department is tasked with overseeing the tank farm and wastewater facility.[7] The Maintenance Department repairs and performs preventative maintenance on Allied's vehicles and equipment, including hoses and filters.[8] Utility employees, cut grass, paint and maintain Allied's offices.[9] The fuelers, maintenance employees, utility employees and tank farm employees are represented by a Local of the International Association of Machinist ("IAM") and supervised by the Fueling Supervisors at issue here.[10]

The Fueling Supervisors/Dispatchers that Plaintiff seeks to conditionally certify are exempt salaried employees.[11] Unlike the hourly employees who are members of the IAM unit, the Fueling Supervisors/Dispatchers do not engage in the production work that the fuelers, maintenance employees and mechanics of the unionized hourly employees who they oversee.[12]

The Fueling Department operates seven shifts: seven Fueling Supervisors work on the day shift with about 53 fuelers, eight Fueling Supervisors work the afternoon shift with about 52 fuelers and two or three Supervisors work the midnight shift with about nine fuelers.[13] Accordingly, in any shift, a Fueling Supervisor is responsible for between 4 and 16 fuelers.[14]

Fueling Supervisors distribute vehicles, equipment and workload for the day to the fuelers. They are given a list of the fuelers who are to work a given shift by the Duty Manager, who sets the schedule.[15] The inside Fueling Supervisors, or Dispatcher, assigns the fuelers to one of the five terminals.[16] Each day fuelers report to the inside Fueling Supervisor/Dispatcher at Terminal A to

---

[6] *See Id.*
[7] *See Id.*
[8] *See Id.*
[9] *See Id.*
[10] *See Id.*
[11] *See Id.* at ¶5.
[12] *See Id.*
[13] *See Id.* at ¶6.
[14] *See Id.*
[15] *See Id.* at ¶7.
[16] *See Id.*

obtain this assignment.[17] Airlines put out a daily schedule of their departure times, gates and fuel requests.[18] The Fueling Supervisors transpose that information to a form or ticket, which contains the location and amount of fuel needed, and assigns the tickets to the fueler who fuels the aircraft.[19] The airlines also provide the Fueling Supervisors with updates on their fueling needs and delays in arrivals and departures throughout the day, which result in the Fueling Supervisors having to adjust the tickets and fuelers' schedules.[20]

Each airline and each type of aircraft has its own procedure for fueling.[21] Fuelers are certified to work on particular airlines and particular aircraft; the distinction being procedures and paper work.[22] Fuelers can work only for those airlines for which they are certified.[23] Allied keeps a log of the fuelers' certifications which the Fueling Supervisors consult to ensure that the fuelers assigned to each aircraft are certified to fuel the aircraft.[24]

The Fueling Supervisors who are working "outside" oversee the fuelers; ensuring they are fueling the proper aircraft and flight and following the appropriate procedure for fueling that particular plane. The outside Fueling Supervisors perform daily evaluations; completing a checklist on safety and procedures. The outside Fueling Supervisor's job consists of jockeying the fuelers between airlines, gates and aircraft depending on the needs at any given moment. Changes in the initial gate assignments, aircraft fueling schedule and terminal assignments are the norm. Fueling Supervisors speak with each other about the needs of the particular terminal, gate and airline and also communicate with the airlines as the shift proceeds.[25]

---

[17] *See Id.*
[18] *See Id.*
[19] *See Id.*
[20] *See Id.*
[21] *See Id.* at ¶8.
[22] *See Id.*
[23] *See Id.*
[24] *See Id.*
[25] *See Id.* at ¶9.

At the end of each shift, Fueling Supervisors call each airline to see if there was any delay in fueling any of their flights. Whenever fueling an airline is delayed, even by a few minutes, the Fueling Supervisors write a "delay report." All Fueling Supervisors also write "irregularity reports," which cover any occurrence out of the norm; everything from inappropriate employee conduct to broken equipment. These reports are then used to initiate the disciplinary proceeding provided for under the IAM's CBA and placed in the employee's personnel file. Additionally, Fueling Supervisors speak with the IAM members regarding errors of other incidents and provide verbal warnings. Fueling Supervisors are held accountable for the performance of the individuals they supervise and are disciplined for their subordinates' performance problems, issues with conduct or mistakes.[26]

Fueling Supervisors are on salary and receive the same benefit package as Allied's other management employees. During the relevant time period, Fueling Supervisors received a salary of $55,000 per year, which is $1,057.69 per week. While Fueling Supervisors may earn an additional bonus if they have to work beyond their assigned 8-hour shift, this pay is intended to supplement their annual salary. Although the Fueling Supervisor's paystubs may appear to have hourly pay, this is only due to a requirement of Allied's payroll providers. Even General Manager, Rory McCormack's paystub has an hourly rate listed on each paystub, even though he is paid an annual salary.[27]

Fueling Supervisors fill out the same application as upper management when they apply for positions. Fueling Supervisors also are governed by the same code of conduct as Allied's upper management, which is distinct from the workplace requirements of the hourly IAM employees.[28]

---

[26] *See Id.* at ¶11.
[27] *See Id.* at ¶12.
[28] *See Id.* at ¶13.

Fueling Supervisors park in the management parking lot that is near Allied's offices. In contrast, the IAM hourly employees have a separate locker room, parking lot and uniforms.[29]

In late 2015-2016, the New Jersey Department of Labor investigated Allied's pay practices with respect to the Fueling Supervisors. The New Jersey Department of Labor closed the investigation with a finding of no violation. An OPRA request was completed for the investigation file, and Allied was advised by the Department of Labor that the investigation files were destroyed because no violation was found.[30]

Given the above, conditional certification of the proposed class of Fueling Supervisors/Dispatchers is improper because as exempt employees, these employees are not entitled to receive overtime.

## **LEGAL ANALYSIS**

### I.    **CONDITIONAL CERTIFICATION SHOULD BE DENIED BECAUSE THE PROPOSED COLLECTIVE CONSISTS OF EMPLOYEES WHO ARE EXEMPT FROM RECEIVING OVERTIME.**

During the conditional certification stage, the "District Court in the role of gatekeeper…to screen at this early stage overly burdensome litigation." *Mitchell v. Covance, Inc.,* 438 F. Supp. 3d 341, 346 (E.D. Pa. 2020). To satisfy the conditional certification standard, Plaintiff "must produce some evidence beyond pure speculation of a factual nexus between the manner in which the employer's alleged policy affected [him] and the manner in which it affected other employees." *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 570 (D.N.J. 2014); *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013). This is a standard Plaintiffs cannot satisfy because as exempt employee they are not entitled

---

[29] *See Id.* at ¶14.
[30] *See Id.* at ¶15.

to overtime, and therefore, cannot point to any policy by Allied that deprived them of overtime pay.

Under the FLSA, "'any employee employed in a bona fide executive, administrative, or professional capacity' is exempt from the overtime requirement." *Tan v. PKLL Inc.*, 2024 WL 1673352, at *2 (D.N.J. Apr. 18, 2024), citing 29 U.S.C. §213. Fueling Supervisors, who are paid on a salary basis, are exempt from receiving overtime. Such exempt position was confirmed by the NJDOL in 2016.

### A.  Fueling Supervisors Are Exempt Executives.

An employee is a bona fide executive, and therefore exempt from receiving overtime, when:

> (1) Compensated on a "salary basis" at a rate of not less than $455 per week; (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) Who "customarily and regularly" directs the work of two or more other employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

*Minshou Lin v. Fada Grp. Inc*, 2021 WL 423757, at *2 (D.N.J. Feb. 4, 2021). Plaintiff and the other Fueling Supervisors in the proposed collective satisfy these requirements.

As detailed in the McCormack Declaration, Plaintiff and the other opt-ins received a salary of $55,000 annually ($1,057.69 per week),[31] which is over double the $455 weekly minimum required for a supervisor to be exempt under the FLSA. The salary basis test "requires that an employee receive a predetermined and fixed salary that does not vary on the amount of time worked." *See Helix Energy Solutions Grp. v. Hewitt*, 598 U.S. 39, 46 (2023), citing 29 C.F.R.

---

[31] *See Id.* at ¶12.

541.602(a). While Plaintiff relies on his paystub to contend that he was paid hourly, this is incorrect. Allied's payroll company, as a default, expresses all pay as an hourly rate at 40 hours. Even the General Manager, Rory McCormack, has an hourly rate listed on his weekly paystubs.[32] This does not change the fact that Plaintiff and the other Fueling Supervisors are paid on a salary basis.

### 1.  Plaintiff's Primary Duty Was to Manage the Enterprise and Its Employees.

When determining Plaintiff's primary duty for purposes of the FLSA:

> the regulations provide guidance in the form of non-exhaustive factors, including: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."

*Hudson v. Absecon Emergency Servs., Inc.*, 2016 WL 5329593, at *7 (D.N.J. Sept. 22, 2016), citing 29 C.F.R. § 541.700(a).  With respect to management, it generally includes, but is not limited to:

> directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102

---

[32] *See Id.* at ¶12.

8

Here, the duties and responsibilities of the Fueling Supervisors fall squarely within the definition of management. Particularly, Fueling Supervise distribute the equipment and workload to the *unionized hourly* fuelers. The dispatchers take the airline's daily schedule and use it to distribute the daily fueling assignments to the fuelers. The outside Fueling Supervisors, oversee the fuelers; ensuring that the fuelers are fueling the appropriate aircraft and following the appropriate procedure for fueling that particular plane. Fueling Supervisors perform daily evaluations; completing a checklist on safety and procedures. The Fueling Supervisors speak with the airlines that Allied services, to ensure that the fuelers timely, efficiently, and effectively provide fuel to the aircraft. These activities are all hallmark managerial responsibilities.

### 2. Fueling Supervisors Customarily and Regularly Direct the Work of 2 Or More Employees.

The Fueling Supervisors regularly directs the work of between four (4) to sixteen (16) fuelers, ramp personnel and repair personnel on any given shift.[33] That the Fueling Supervisors customarily and regularly direct the work of two or more employees is confirmed by Plaintiff who in his support affidavit states "[w]e assigned fueling employees to perform fueling services on specific planes and airlines, and we monitored their work to ensure proper completed of each job ticket." *See* [Doc. No. 17-8] at ¶6.

### 3. The Fueling Supervisors Have the Ability to Recommend Disciplinary Action.

The disciplinary actions taken against the *unionized fuelers* are subject to the disciplinary proceeding set out in the CBA between the Allie*d* and the IAM. However, whether discipline is imposed is based on the recommendations and write ups from the Fueling Supervisors.[34]

---

[33] *See Id.* at ¶6.
[34] *See Id.* at ¶11.

Given these duties, Plaintiff and the other Fueling Supervisors satisfy the exempt duties test of a supervisory employee.

**B.  Fueling Supervisors Are Exempt Under The Administrative Exemption.**

In addition to the executive exemption, the Fueling Supervisors may also be classified as exempt under the administrative exemption. Employees will fall within the administrative exemption when:

> (1)     Compensated on a salary or fee basis at a rate of not less than $455 per week …exclusive of board, lodging or other facilities;
>
> (2)     Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3)     Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. 541.200.

**1.  Fueling Supervisors Were Engaged in Non-Manual Work Directly Related to the Management and General Business Operations of Allied and Allied's Airline Customers.**

The Fueling Supervisors are engaged in non-manual work that is directly related to the management and business operations of Allied and its airline customers. Work directly related to the management and general business operations is defined as "work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201.  Fueling Supervisors ensure that Allied's operations at EWR function efficiently and effectively. The Fueling Supervisors are in constant contact with Allied's airline customers to ensure that fuel is delivered to each flight before take-off. This is the type of critical work that is necessary to ensure that Allied's business operates.

2. **Fueling Supervisors Exercise Independent Judgment and Discretion.**

The Fueling Supervisors' duties and responsibilities require that they exercise independent judgment and discretion. The Fueling Supervises exercise independent discretion to continually reassign staff and equipment amongst terminals throughout each shift depending upon weather, mechanical issues, airline directives, aircraft arrivals and departures. Without benefit of pre-packaged and/or established procedures, the Fueling Supervisors are responsible for the reallocation of labor, equipment and other resources to ensure aircraft ground time is within committed service times. If a flight is delayed or terminals changed, the Fueling Supervisors must make the determination and/or decision of reallocating fueling personnel, equipment and tankers from other terminals. In some instances, these decisions result in holding staff past a scheduled quit time which may cause Allied to incur overtime charges. Thus, service time must be balanced against labor costs. Fueling Supervisors make these substantial and significant judgments based upon their experience, knowledge, training and expertise. There is no manual to follow in making these hourly/daily decisions and no approvals necessary from upper management. Further, they decide if, and when, to start the disciplinary process against the union employees.

C. **Fueling Supervisors Are Exempt Under The Mixed Exemption.**

In addition to the executive and administrative exemptions, "the FLSA exempts from its overtime provisions '[e]mployees who perform a combination of exempt duties.'" *Lambert v. Jariwala & Co., LLC*, 2023 WL 1883354, at *7 (D.N.J. Feb. 10, 2023), citing 29 C.F.R. § 541.708. Under the combination exemption:

> [e]mployees who perform a combination of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees may qualify for exemption. Thus, for example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption. **In other words, work**

11

**that is exempt under one section of this part will not defeat the exemption under any other section**.

29 C.F.R. § 541.708 (emphasis added). As discussed in Sections I(A) and (B), *supra*, Fueling Supervisors engage in duties that are exempt under both the executive and administrative exemptions, as their duties and responsibilities are integral to Allied's operations, direct between 4 and 16 employees on each shift, exercise independent judgment and discretion, and have the authority to write up and initiate the disciplinary process. As such, Fueling Supervisors who are paid a salary in excess of $455 per week are exempt and not entitled to overtime. Therefore, Plaintiffs cannot demonstrate that they and the proposed collective have been subjected to a common policy that has deprived them of overtime pay.

## II.   PLAINTIFFS' BOILERPLATE AFFIDAVITS DO NOT SATISFY THE STANDARD TO MEET CONDITIONAL CERTIFICATION.

Additionally, Plaintiffs' boilerplate affidavits are insufficient to demonstrate that they have been subjected to a common policy or scheme that has deprived them of overtime. To satisfy their burden at this stage, "a plaintiff must [still] produce some evidence 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Reed v. Empire Auto Parts, Inc.,* 2015 WL 761894, at *4 (D.N.J. Feb. 23, 2015). While Plaintiff also submits the affidavits of two other former Fueling Supervisors, these paltry and boilerplate statements fail to demonstrate how Plaintiff and the other Fueling Supervisors in the proposed collective were subjected to a common policy, practice or scheme that denied them of overtime pay to which they were owed. The affidavits are based solely on the individual's own observations, and do not provide the specifics of which other Fueling Supervisors were allegedly subjected to the same requirement to work 30 minutes before and 30 minutes prior to their scheduled shifts or through their lunch breaks. Such boilerplate assertions, without more, have been found insufficient to meet even the modest factual showing required at

the initial certification stage. *See, e.g., DiFlavis v. Choice Hotels Int'l, Inc.*, 2020 WL 610778, at *15 (E.D. Pa. Feb. 6, 2020) ("[a] plaintiff's '[u]nsupported assertions of widespread violations are not sufficient.'"); *Asirifi v. W. Hudson Sub-Acute Care Ctr., LLC*, 2014 WL 294886, at *2 (D.N.J. Jan. 24, 2014) ("[t]he court found that '[the plaintiff's] argument that Defendants must have violated other nurses' rights because their uniform policies and procedures allegedly violated her rights is insufficient to satisfy the modest factual showing test.'"); *Rogers v. Ocean Cable Grp. Inc.,* 2011 WL 6887154, at *4 (D.N.J. Dec. 29, 2011)("Although each plaintiff submitted an affidavit stating they worked in excess of 40 hours in a workweek, what they are essentially asking the Court to do is to assume that because they worked in excess of 40 hours in a workweek that the other technicians must have as well."). Given the paltry evidence presented, conditional certification is not appropriate.

### III.    THE PURPORTED OFF THE CLOCK WORK AND MEAL BREAK REQUIRES AN INDIVIDUALIZED INQUIRY.

The type of alleged "off-the-clock" and "meal break" work that Plaintiff bases his alleged overtime claims are not the type of claims that are easily decided on a class or collective basis. In *Ferreras v. Am. Airlines, Inc.,* the Third Circuit overturned a Rule 23 class for non-exempt hourly employee's working for one of Allied's largest customers, American Airlines, in part because:

> Any members of the Meal Break Subclass would have to offer individualized evidence regarding which meal breaks they spent working and for how long. And, of course, any claim that an employee was working off-the-clock would require an individualized inquiry as to when and to what extent that happened. There is no easy measure, like the time clock, to which the parties can turn to determine the amount of time an employee may have been working. Accordingly, plaintiffs would again need to provide particularized evidence to show when employees were working, so common issues do not predominate over individual ones.

*Ferreras v. Am. Airlines, Inc.,* 946 F.3d 178, 186 (3d Cir. 2019). While a Rule 23 Class and a FLSA collective have different standards, the finding that such individualized inquiry is required to determine the amount of purported off-the-clock work (even if it was subject to overtime) is not easy to determine on collective basis and requires an individual inquiry. In *Reed*, 2015 WL 761894, at *4, when rejecting a conditional certification request, the Court considered "the extent to which the claims of the putative class can be proven through common evidence, versus individualized testimony."

Further, with respect to meal breaks it is notable that there was no meal break deducted from their paycheck. While all Fueling Supervisors were provided with a meal period, even if they had to conduct any work during this time, this time was compensated. Accordingly, all that remains is the time allegedly worked before the start and end of each shift, which is both encompassed by their salary, and, even if subject to overtime pay, would require an individualized inquiry into when an employee started and ended each day that makes a collective action inappropriate. Such an individualized inquiry is highlighted by the affidavits presented by the three plaintiffs in support of the collective motion. Mr. Mejia alleges that "Allied Aviation required us to arrive at Allied's Main Office at least 30 minutes before our scheduled shifts, to work through lunch, and to stay at least 30 minutes after our scheduled shifts." *See* [Doc. No. 17-8] at ¶13. In contrast, Jose Fernandez stated that he "would typically arrive back at Allied's main facility at least 20-25 minutes after [his] scheduled shift time ended." *See* [Doc. No. 17-10] at ¶6. Mr. Moskowitz stated "I was also required to work at least 30 minutes after [his] scheduled shift ended to leave Newark Airport grounds, return to Allied's main facility, and return Allied's vehicles." [Doc. No. 17-9] at ¶5. These three individuals all make disparate statements about their ending time, requiring an individualized

inquiry and failing to show a common policy or plan that has deprived them of purported overtime (which they are not – as the NJDOL determined – entitled to received).

## IV.    PLAINTIFF DOES NOT OFFER TESTIMONY TO ALLIED'S PRACTICES AFTER 2023.

Plaintiff's employment was terminated in August 2023,[35] Jose Fernandez's employment terminated in 2022,[36] and Todd Moskowitz's employment ended in April 2023.[37] None of these individuals can expound on Allied's practices after August 2023. Despite this gap, Plaintiff seeks to conditionally certify a class of Fueling Supervisors from June 5, 2021 through present. However, this time period is both outside the three -year statute of limitations provided for in the FLSA (as three years from notice would be April 2022), and seeks to includes individuals with whom employees never worked and the pay practices of which Plaintiffs cannot attest to. Given the above, even if this Court were to find Plaintiff met the modest factual showing to warrant issuing notice, the class should be limited to April 2022 through August 2023, which is within the FLSA's statute of limitations and would include employees with whom Plaintiffs have worked.

## CONCLUSION

As determined by the NJDOL, the proposed class of Fueling Supervisors/Dispatchers are exempt employees who are not entitled to overtime. As a result of this finding, Plaintiffs have not and cannot meet their burden to demonstrate that conditional certification is appropriate as Plaintiffs were not subject to a common policy or scheme that deprived them of overtime pay. Further, Plaintiff's boilerplate affidavits are too general to demonstrate that all members of the proposed collective were subject to the same scheme. Further, the time period of the proposed class both exceeds the FLSA's three-year statute of limitations, and seeks individuals who were

---

[35] *See Id.* at ¶16.
[36] *See Id.*
[37] *See Id.*

employed well after Plaintiffs left Allied in 2022 and 2023. Accordingly, Allied respectfully submits that conditional certification should be denied in its entirety.

Dated: April 7, 2025
       Uniondale, New York

                               FORCHELLI DEEGAN TERRANA LLP

                               By: /s/_____
                               Lisa M. Casa, Esq.
                               Gregory S. Lisi, Esq.
                               *Attorneys for Defendant*
                               333 Earle Ovington Blvd., Suite 1010
                               Uniondale, New York 11553
                               Tel.: (516) 248-1700

## <u>CERTIFICATE OF SERVICE</u>

 This is to certify that a copy of this document was served electronically, via ECF, on April 7, 2025, on all registered participants identified on the Notice of Electronic Filing in this matter.

<u>/s/ Lisa M. Casa</u>