# Forchelli, Curto, Deegan, Schwartz, Mineo & Terrana, LLP

### COUNSELORS AT LAW

THE OMNI
333 EARLE OVINGTON BLVD., SUITE 1010
UNIONDALE, NEW YORK  11553
TELEPHONE: (516) 248-1700
FACSIMILE: (516) 248-1729

WEBSITE:WWW.FORCHELLILAW.COM

**FRANK W. BRENNAN**
PARTNER
FBRENNAN@FORCHELLILAW.COM

February 12, 2016

VIA FAX (609-695-1174)

State of New Jersey
Department of Labor and Workforce Development
  Division of Wage and Hour Compliance
124 Halsey Street, 2nd Floor
Newark, New Jersey 01114

Attention:  John Cataldo, Investigator

Re:    Allied Service Company of New Jersey, Inc.

Dear Investigator Cataldo:

As you are aware, this office is counsel to the respondent, Allied Service Company of New Jersey Inc. (hereinafter "Respondent"), in regard to the anonymous allegations of supervisors not being paid overtime, supervisors not being provided time for lunch, supervisors not being paid for "no lunch" and supervisors not being paid for all hours worked which is currently being investigated by the Division of Wage and Hour Compliance for the New Jersey Department of Labor and Workforce Development.

As discussed in our February 4, 2016 meeting, the Respondent employs sixty-five (65) supervisors at Newark International Airport on a salaried basis to oversee and direct the work of one hundred eighty-two (182) unionized employees in the airplane fuelers trade classification. As demonstrated in the documents and information previously provided, the starting salary for a supervisor at Newark International Airport is forty-five thousand dollars ($45,000) per year which breaks down to approximately eight hundred sixty-five dollars per week.  In addition, as attested to by Mr. McCormack, the Respondent's general manger for its Newark International Airport operations, the Respondent provides all of its employees with regular meal breaks.  In fact, Mr. McCormack advised that on typical days the Respondent's fueling operations experience a daily lull from approximately 10:00 a.m. through 1:00 p.m. at which time its employees are provided break periods.  Based upon the documents and information provided, it is the Respondent's position that the anonymous complaint is without merit as the Respondent

FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP

COUNSELORS AT LAW

has and continues to fully comply with all required payment obligations to its exempt supervisory employees.

The State of New Jersey, like the United States Department of Labor, allows for select exemptions from overtime and minimum wage requirements. In fact, in 2011, the State of New Jersey repealed its rules governing exemptions and instead adopted by reference the analogous regulations issued under the federal Fair Labor Standards Act, 29 U.S.C. 201-219. It is the Respondent's position that its supervisors are subject to the Executive and/or Administrative Exemptions.

The adopted federal regulation provide:

§ 541.100       General rule for executive employees.

(a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:

(1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

(b) The phrase "salary basis" is defined at § 541.602; "board, lodging or other facilities" is defined at § 541.606; "primary duty" is defined at § 541.700; and "customarily and regularly" is defined at § 541.701.

§ 541.102       Management.

Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending

FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP

COUNSELORS AT LAW

promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

§ 541.103    Department or subdivision.

(a) The phrase "a customarily recognized department or subdivision" is intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function. A customarily recognized department or subdivision must have a permanent status and a continuing function. For example, a large employer's human resources department might have subdivisions for labor relations, pensions and other benefits, equal employment opportunity, and personnel management, each of which has a permanent status and function.

(b) When an enterprise has more than one establishment, the employee in charge of each establishment may be considered in charge of a recognized subdivision of the enterprise.

(c) A recognized department or subdivision need not be physically within the employer's establishment and may move from place to place. The mere fact that the employee works in more than one location does not invalidate the exemption if other factors show that the employee is actually in charge of a recognized unit with a continuing function in the organization.

(d) Continuity of the same subordinate personnel is not essential to the existence of a recognized unit with a continuing function. An otherwise exempt employee will not lose the exemption merely because the employee draws and supervises workers from a pool or supervises a team of workers drawn from other recognized units, if other factors are present that indicate that the employee is in charge of a recognized unit with a continuing function.

§ 541.104    Two or more other employees.

(a) To qualify as an exempt executive under § 541.100, the employee must customarily and regularly direct the work of two or more other employees. The phrase "two or more other employees" means two full-time employees or their equivalent. One full-time and two half-time employees, for example, are equivalent to two full-time employees. Four half-time employees are also equivalent.

(b) The supervision can be distributed among two, three or more employees, but each such employee must customarily and regularly direct the work of two or more other full-time employees or the equivalent. Thus, for example, a department with five full-time nonexempt

FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP
COUNSELORS AT LAW

workers may have up to two exempt supervisors if each such supervisor customarily and regularly directs the work of two of those workers.

(c) An employee who merely assists the manager of a particular department and supervises two or more employees only in the actual manager's absence does not meet this requirement.

(d) Hours worked by an employee cannot be credited more than once for different executives. Thus, a shared responsibility for the supervision of the same two employees in the same department does not satisfy this requirement. However, a full-time employee who works four hours for one supervisor and four hours for a different supervisor, for example, can be credited as a half-time employee for both supervisors.

§ 541.105    Particular weight.

To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

§ 541.106    Concurrent duties.

(a) Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met. Whether an employee meets the requirements of § 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700. Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.

(b) For example, an assistant manager in a retail establishment may perform work such as serving customers, cooking food, stocking shelves and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management. An assistant manager can supervise employees and serve

FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP

COUNSELORS AT LAW

customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves.

(c) In contrast, a relief supervisor or working supervisor whose primary duty is performing nonexempt work on the production line in a manufacturing plant does not become exempt merely because the nonexempt production line employee occasionally has some responsibility for directing the work of other nonexempt production line employees when, for example, the exempt supervisor is unavailable. Similarly, an employee whose primary duty is to work as an electrician is not an exempt executive even if the employee also directs the work of other employees on the job site, orders parts and materials for the job, and handles requests from the prime contractor.

§ 541.200     General rule for administrative employees.

 (a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:

> (1)     Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;

> (2)     Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

> (3)     Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

(b) The term "salary basis" is defined at § 541.602; "fee basis" is defined at § 541.605; "board, lodging or other facilities" is defined at § 541.606; and "primary duty" is defined at § 541.700.

§ 541.201     Directly related to management or general business operations.

(a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

(b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and

FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP

COUNSELORS AT LAW

health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.

(c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

§ 541.202      Discretion and independent judgment.

 (a) To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.

(b) The phrase "discretion and independent judgment" must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

(c) The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term "discretion and independent judgment" does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action

FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP

COUNSELORS AT LAW

rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment. For example, the policies formulated by the credit manager of a large corporation may be subject to review by higher company officials who may approve or disapprove these policies. The management consultant who has made a study of the operations of a business and who has drawn a proposed change in organization may have the plan reviewed or revised by superiors before it is submitted to the client.

(d) An employer's volume of business may make it necessary to employ a number of employees to perform the same or similar work. The fact that many employees perform identical work or work of the same relative importance does not mean that the work of each such employee does not involve the exercise of discretion and independent judgment with respect to matters of significance.

(e) The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. See also § 541.704 regarding use of manuals. The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled as a "statistician."

(f) An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly. For example, a messenger who is entrusted with carrying large sums of money does not exercise discretion and independent judgment with respect to matters of significance even though serious consequences may flow from the employee's neglect. Similarly, an employee who operates very expensive equipment does not exercise discretion and independent judgment with respect to matters of significance merely because improper performance of the employee's duties may cause serious financial loss to the employer. SOURCE: 69 FR 22260, April 23, 2004, unless otherwise noted.

§ 541.203    Administrative exemption examples.

(c) An employee who leads a team of other employees assigned to complete major projects for the employer (such as purchasing, selling or closing all or part of the business, negotiating a real estate transaction or a collective bargaining agreement, or designing and implementing productivity improvements) generally meets the duties requirements for the administrative exemption, even if the employee does not have direct supervisory responsibility over the other employees on the team.

FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP

COUNSELORS AT LAW

ANALYSIS & SUMMATION

Newark International Airport has five (5) separate terminals, "A," "B," "C," "International" and "Cargo."  Each terminal is recognized and functions independently from other terminals within the Airport. Each terminal supports different airlines and aircraft.  Some terminals handle only domestic travel and others only international travel and passengers.  Other terminals handle only cargo and serve no passengers, at all.  Each terminal services better than three hundred (300) aircraft arrivals and departures on any given day.  Clearly, each terminal is a recognized as a separate and distinct department.

The Respondent's supervisors at Newark International Airport oversee and direct the work of one hundred eighty-two (182) unionized employees in the aircraft fuelers trade classification.  Each of Respondent's supervisors regularly directs the work of between four (4) to sixteen (16) fuelers, ramp personnel and repair personnel on any given shift.  The Respondent's supervisors also hold the authority to conduct employee performance evaluations and discipline employees for unsatisfactory work performance or for failure to adhere to the Respondent's policies, procedures and regulations.

The Respondent's supervisors also exercise independent discretion to continually reassign staff and equipment amongst terminals throughout each shift depending upon weather, mechanical issues, airline directives, aircraft arrivals and departures.  Without benefit of pre-packaged and/or established procedures, the Respondent's supervisors are responsible for the reallocation of labor, equipment and other resources to ensure aircraft ground time is within committed service times.  If a flight is delayed or terminals changed, the Respondent's supervisors must make the determination and/or decision of reallocating fueling personnel, equipment and tankers from other terminals.  In some instances, these decisions result in holding staff past a scheduled quit time which may cause the Respondent to incur overtime charges.  Thus, service time must be balanced against labor costs.  The Respondent's supervisors make these substantial and significant judgments based upon their experience, knowledge, training and expertise.  There is no manual to follow in making these hourly/daily decisions and no approvals necessary from upper management.

In light of the foregoing, and the information and documents previously provided, the Respondent respectfully submits that the Respondent's supervisors are subject to both the Executive and Administrative Exemptions to the overtime and minimum wage requirements under the New Jersey State Wage and Hour Laws and Regulations.  Based upon the foregoing, the Division of Wage and Hour Compliance for the New Jersey Department of Labor and Workforce Development should issue a determination that the Respondent has fully complied with all of its obligations to its supervisory employees under the New Jersey State Wage and Hour Laws and Regulations.  As such, it is respectfully requested that the anonymous complaint against the Respondent for an alleged failure to properly pay supervisors be denied and the matter closed.

FORCHELLI, CURTO, DEEGAN, SCHWARTZ, MINEO & TERRANA, LLP

COUNSELORS AT LAW

      If you have any questions, or should you require anything further, please do not hesitate to contact me.

                                          Respectfully submitted,

                                          s/ Frank Brennan      .
                                          Frank W. Brennan