Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WILLIAM MEJIA, on behalf of himself and those similarly situated, | : : : : : | Civil Action No. 24-cv-6684 (SRC) |
| Plaintiff, | : : : | OPINION |
| v. | : : : |  |
| ALLIED AVIATION SERVICES, INC., ABC CORPS. 1-10 (fictitious parties), and JOHN/JANE DOES 1-10 (fictitious parties), | : : : : : : |  |
| Defendant. | : : |  |

**CHESLER**, District Judge

This matter comes before the Court on the motion by Plaintiff William Mejia ("Named Plaintiff" or "Mejia") for conditional certification of his Fair Labor Standards Act, 29 U.S.C. § 201, et seq., ("FLSA"), claim as a collective action, pursuant to 29 U.S.C. § 216(b). (D.E. No. 17.) Defendant opposes the motion. Having considered the parties' submissions, (D.E. No. 17-1 ("Pl.'s Mov. Br."); D.E. No. 28 ("Def.'s Opp. Br."); D.E. No. 29 ("Pl.'s Reply Br.")), the Court decides this motion without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiff's motion is **GRANTED.**

I.  BACKGROUND

From 2004 until August 2023, Named Plaintiff worked as a Fueling Supervisor for Defendant Allied Aviation Services, Inc. ("Defendant" or "Allied"), which manages into-plane

fueling services at Newark Liberty International Airport ("Newark Airport"). (D.E. No. 1 ("Compl.") ¶¶ 8, 13-14; Def.'s Opp. Br. at 1.) In this action, Named Plaintiff seeks to recover uncompensated wages on behalf of himself and those similarly situated who were or currently are employed by Defendant. (Pl.'s Mov. Br. at 1.) Mejia asks this Court to conditionally certify a collective action under the FLSA "of all persons who are working or have performed work for Allied Aviation as fueling supervisors and/or dispatchers and worked at least 40 hours of work in one or more workweeks at any time since June 4, 2021 through the present in the State of New Jersey." (D.E. No. 17 at 2.) In addition to the FLSA, Named Plaintiff brings claims under the New Jersey State Wage and Hour Law, N.J.S.A. 34:11-56a et seq.

In essence, Named Plaintiff alleges that he and similarly situated employees were not fully compensated for their work, in violation of the FLSA, due to Defendant's alleged policies and practices. (Compl. ¶ 25.) Named Plaintiff alleges that Defendant willfully: (i) engaged in a practice or policy of not paying Named Plaintiff and those similarly situated for "integral and indispensable work performed outside of their scheduled shifts"; (ii) engaged in a practice or policy of "failing to pay its employees overtime at a rate of one-and-one half times their regular rates of pay when they earned additional remuneration"; and (iii) failed to keep record of all hours "worked each workday and total hours worked each workweek" by Named Plaintiff and those similarly situated in violation of the FLSA. (Id. ¶¶ 52-57.)

In support of the motion for conditional certification, Named Plaintiff relies on the factual allegations in the Complaint and his own declaration. Named Plaintiff attests that Defendant employed approximately 20-35 Fueling Supervisors/Dispatchers at Newark Airport each year, with at least 40 Fueling Supervisors/Dispatchers employed at Newark Airport during the relevant collective action period. (D.E. No. 17-8, Declaration of William Mejia ("Mejia Decl.") ¶ 5.) He

2

alleges that all Fueling Supervisors/Dispatchers were non-exempt employees paid on an hourly basis and had similar responsibilities of "assign[ing] fueling employees to perform fueling services on specific planes and airlines" in addition to monitoring completion of each fueling request. (Mejia Decl. ¶¶ 6, 12.) According to Named Plaintiff, he and other Fueling Supervisors often worked more than forty hours per week but never received overtime pay at a rate of 1.5 times their regular hourly wages and submits four of his earning statements reflecting payment based solely on forty hours of work per week in support. (Mejia Decl. ¶¶ 21, 26, 29; Ex B to D.E. No. 17-8.)

Specifically, Named Plaintiff alleges that Defendant maintained a policy of only compensating Fueling Supervisors for scheduled 8-hour shifts while requiring them to work at least 30 minutes before and after each scheduled shift. (Mejia Decl. ¶ 13; Compl. ¶ 26.) As part of this alleged policy or practice, Fueling Supervisors were required to report to Defendant's main office outside of Newark Airport at least 30 minutes before their scheduled shift in order to "attend meetings, receive instructions and paperwork from the duty managers and other management personnel, and pick up a company vehicle" to drive to Defendant's remote facility inside Newark Airport. (Mejia Decl. ¶¶ 13-15.) After each shift, Fueling Supervisors were then required to drive the company vehicle back to Defendant's main office and complete additional paperwork. (Mejia Decl. ¶¶ 16, 17.) Named Plaintiff states that he and other similarly situated employees performed this "integral and indispensable unpaid work" outside of their scheduled shifts. (Compl. ¶¶ 27-28.) Based on conversations with other Fueling Supervisors/Dispatchers, Named Plaintiff alleges that Defendant required other Fueling Supervisors/Dispatchers to comply with this practice and noted that if the extra work did not exceed two hours at a time, Defendant did not pay them at all for extra work performed. (Mejia Decl. ¶ 29.) Mejia also alleges that Allied maintained a practice of requiring Fueling Supervisors to work through lunch without compensation and if inclement

3

weather caused delays during regular shifts, Defendant required employees to work after their scheduled shifts without compensation in order to complete job tickets. (Compl. ¶¶ 29-30; Mejia Decl. ¶¶ 18-19.)

In further support of the motion for conditional certification, Named Plaintiff submits two declarations from opt-in Plaintiffs and former Fueling Supervisors, Jose Fernandez and Todd Moskowitz, describing their experiences working for Defendant. These declarations largely mirror the allegations presented in the Complaint and Named Plaintiff's own declaration. Mr. Fernandez worked for Defendant as a Fueling Supervisor/Dispatcher from 2006 through 2022 at Defendant's facilities in and around Newark Airport and Mr. Moskowitz worked for Defendant as a Fueling Supervisor/Dispatcher from approximately February 2015 through April 2023 at Defendant's facilities in and around Newark Airport. (See D.E. No. 17-9, Declaration of Jose Fernandez ("Fernandez Decl.") ¶ 2; D.E. No. 17-10, Declaration of Todd Moskowitz ("Moskowitz Decl.") ¶ 2.) Mr. Fernandez and Mr. Moskowitz both attest that they typically worked for more than forty hours per week without overtime pay. (Fernandez Decl. ¶¶ 6, 9; Moskowitz Decl. ¶¶ 6, 9.) They both state that they were required to report to Defendant's main facility outside of Newark Airport 30 minutes before their scheduled 8-hour shift to receive assignments, pick up Defendant's company vehicle, and drive to Defendant's remote facility inside Newark Airport. (Fernandez Decl. ¶¶ 3, 4; Moskowitz Decl. ¶¶ 3, 4). After each scheduled shift, Mr. Moskowitz states he was required to wait for a replacement Fueling Supervisor to arrive before dropping off the company vehicle at Allied's main facility outside of Newark Airport. (Moskowitz Decl. ¶ 5.) Similarly, Mr. Fernandez attests that after each scheduled shift he was "required to work at least 30 minutes" in order to return the company vehicle to Allied's main facility. (Fernandez Decl. ¶ 5.) Both opt-

4

in Plaintiffs further allege that Defendant required them to work without a meal break. (Fernandez Decl. ¶ 6; Moskowitz Decl. ¶ 6.)

## II.     LEGAL STANDARD

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013). Under Section 207 of the FLSA, employers are required to pay overtime to employees who work more than forty hours a week, where such overtime must be paid at a rate "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. The FLSA permits an employee who believes his or her right to overtime compensation has been violated to proceed in a collective action "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Such a suit is known as a "collective action." "A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989). To become parties to an FLSA collective action, employees "must affirmatively opt-in by filing written consents with the court." Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 242–43 (3d Cir. 2013) (citing 29 U.S.C. § 216(b)).

Courts in the Third Circuit approach collective-action certification under the FLSA through a two-step process. In re Citizens Bank, N.A., 15 F.4th 607, 611 (3d Cir. 2021); Camesi, 729 F.3d at 243; Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 192 (3d Cir. 2011), rev'd on other grounds, 569 U.S. 66 (2013). At the first step known as conditional certification, the court makes a preliminary determination on whether the plaintiff has made a "modest factual showing" that the plaintiff and the individuals in the proposed collective group are similarly situated. Symczyk, 656 F.3d at 192. A "modest factual showing" means that "a plaintiff must produce some evidence,

'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy [or practice] affected her and the manner in which it affected other employees." Id. at 193; see also Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 538 (3d Cir. 2012) ("Being similarly situated ... means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA."). The standard at the conditional certification stage is "fairly lenient," Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000), and courts generally "make this determination by examining the pleadings and affidavits in support or opposition to the proposed collective action." Robles v. Vornado Realty Tr., No. 15-1406, 2015 WL 5012597, at *2 (D.N.J. Aug. 21, 2015) (citation omitted).

Elaborating on this standard, the Third Circuit has approvingly quoted the Second Circuit's description of conditional certification at the first step, "as 'determin[ing] whether 'similarly situated' plaintiffs do in fact exist,' while at the second [final certification] stage, the District Court determines 'whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.'" Zavala, 691 F.3d at 536 n.4 (quoting Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)). Indeed, at the second step, plaintiffs must satisfy a preponderance of the evidence standard. Id. at 537. In other words, the plaintiffs will have to show that it is "more likely than not" that "plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Id.

Unlike a Rule 23 action, in which certification produces a class with an independent legal status, in an FLSA collective action "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees who in turn become parties to a collective action only by filing written consent with the court[.]" Genesis Healthcare, 569 U.S. at 75 (internal citation omitted); see also Zavala, 691 F.3d at 536 (explaining that conditional certification of an

6

FLSA collective action is "not really a certification" but instead an exercise of the court's discretionary authority "to facilitate the sending of notice to potential class members.").

### III. DISCUSSION

#### A. Conditional Certification

The Court finds that Named Plaintiff has made a "modest factual showing" that he and other Fueling Supervisors who worked for Defendant are similarly situated to grant conditional certification. Camesi, 729 F.3d at 243. Named Plaintiff, Mr. Fernandez, and Mr. Moskowitz all state that that they were employed at Defendant's facilities in and around Newark Airport in the same role as Fueling Supervisors/Dispatchers during the relevant time period. (Mejia Decl. ¶ 3; Fernandez Decl. ¶¶ 2, 3; Moskowitz Decl. ¶¶ 2, 3.) Named Plaintiff, Mr. Fernandez, and Mr. Moskowitz all state that they were subjected to Defendant's alleged policy of only paying Fueling Supervisors/Dispatchers for scheduled shifts while requiring them to routinely work before and after these shifts. (Pl.'s Mov. Br. at 12; Mejia Decl. ¶¶ 13-17; Fernandez Decl. ¶¶ 3-5; Moskowitz Decl. ¶¶ 3-5.) Specifically, the three declarations indicate that for at least 30 minutes before a scheduled shift, they were required to attend meetings, receive instructions from supervisors, print out any necessary paperwork, and pick up Allied's vehicle from its main facility outside of Newark Airport and drive to Allied's remote facility inside Newark Airport, all before the start of their scheduled shift. (Mejia Decl. ¶ 15; Fernandez Decl. ¶ 4; Moskowitz Decl. ¶ 4.) As Fueling Supervisors, Named Plaintiff and the opt-in Plaintiffs allege they were also required to work after scheduled shifts in order to return Defendant's vehicle to its main facility. (Mejia Decl. ¶ 16; Fernandez Decl. ¶ 5; Moskowitz Decl. ¶ 5.) As a result, all three individuals attest to the fact that they routinely worked more than forty hours per week but were not paid any overtime pay at the rate of 1.5 times their regular hourly wages. (Mejia Decl. ¶¶ 9, 12-17, 21-23, 26; Fernandez Decl.

¶¶ 3, 9; Moskowitz Decl. ¶¶ 3, 9.) Named Plaintiff declares that "based on [his] conversation with other Fueling Supervisors/Dispatchers" all Fueling Supervisors/Dispatchers were required by Defendant to work before and after their scheduled shifts resulting in excess of forty hours worked per week without overtime pay of 1.5 times their regular hourly wages. (Mejia Decl. ¶ 29.) The three declarations also explain that Defendant required them to work through shifts without a meal break. (Mejia Decl. ¶ 18; Fernandez Decl. ¶ 6; Moskowitz Decl. ¶ 6.) The Court finds that based on these statements, Named Plaintiff has produced some evidence beyond mere speculation "of a factual nexus between the manner in which" Defendant's alleged policies and practices affected him "and the manner in which [they] affected other employees" to satisfy the standard for conditional certification. Symczyk, 656 F.3d at 193.

Defendant's arguments in opposition are not persuasive. Defendant argues the Court should deny conditional certification of the collective action because: (i) the "boilerplate" affidavits are insufficient to meet the standard for conditional certification; (ii) Fueling Supervisors and/or Dispatchers are exempt for purposes of qualifying for overtime payments; and (iii) the allegations in the three declarations require individualized inquiry and are not suitable for collective action. The Court disagrees.

Defendant's argument that the three declarations "make disparate statements about their ending time, requiring an individualized inquiry" is without merit. (Def.'s Opp. Br. at 14-15.) Defendant argues that the three declarations indicate different lengths of time in which the former Fueling Supervisors performed work after each scheduled shift. (Id.) However, the statements Defendant points to demonstrate a difference of ten minutes of alleged "off-the-clock" work. As Named Plaintiff points out, collective action members need only be similar, not identical, and such a minor distinction does not defeat Named Plaintiff's showing that the proposed collective group

8

is similarly situated. See Ritzer v. UBS Fin. Servs., Inc., No. 08-1235, 2008 WL 4372784, at *2 (D.N.J. Sept. 22, 2008).

Moreover, at this stage, consideration of any individual differences as well as consideration of whether Fueling Supervisors/Dispatchers are exempt or non-exempt for purposes of qualifying for overtime payments, would be premature. These inquiries address the merits of Named Plaintiff's claim which the Court does not consider at this juncture. See, e.g., Maddy v. Gen. Elec. Co., 59 F. Supp. 3d 675, 681 (D.N.J. 2014) (noting that "[c]ourts do not assess the merits of plaintiffs' underlying claims at [the conditional certification] stage"); Goodman v. Burlington Coat Factory, No. 11-4395, 2012 WL 5944000, at *6 (D.N.J. Nov. 20, 2012) (declining to "address[ ] the merits of plaintiffs' claim and mak[e] credibility determinations" in evaluating motion for conditional certification). Indeed, at this step, the sole present inquiry is whether Named Plaintiff has made a modest factual showing of the manner in which Defendant's alleged policies and practices affected him and the way they affected other Fueling Supervisors/Dispatchers. In other words, Named Plaintiff need only show that similarly situated plaintiffs exist.

To reiterate, the standard at this stage is fairly lenient and as described above, Named Plaintiff has met his burden. The declarations of the opt-in Plaintiffs and Named Plaintiff indicate they had the same job responsibilities as Fueling Supervisors. Furthermore, Defendant's own certification indicates that the duties and obligations of the proposed collective class are similar. Rory McCormack, General Manager of Allied, states that Fueling Supervisors/Dispatchers are "tasked with managing and overseeing Allied's fueling operations[.]" (D.E. No. 28-1, Declaration of Rory McCormack, ("McCormack Decl.") ¶ 5.) Among other responsibilities, Fueling Supervisors "distribute vehicles, equipment and workload for the day to the Allied's fuelers" and "perform daily evaluations, completing a checklist on safety and procedures." (McCormack Decl.

¶¶ 7, 9.) These assertions, combined with the statements of Named Plaintiff, Mr. Moskowitz, and Mr. Fernandez declaring they were subject to the same policies concerning their shifts, including working more than forty hours per week and performing duties before and after their scheduled shifts without overtime compensation, satisfies the standard for conditional certification.

### B. Notice

"Upon conditional certification of a FLSA collective action, a court has discretion to provide court-facilitated notice to potentially eligible members of the collective action." Pearsall-Dineen v. Freedom Mortg. Corp., 27 F. Supp. 3d 567, 573 (D.N.J. 2014). "[D]istrict courts may 'regulate their practice [of facilitating notice] in any manner not inconsistent with federal or local rules.'" Id. at 574 (quoting Hoffmann-La Roche, 493 U.S. at 170). "Such notice ensures that employees receive 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" Id. at 573 (quoting Hoffman–La Roche, 493 U.S. at 170). However, the Supreme Court has instructed that when exercising its discretionary power over the notice-giving process, a court must "be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." Hoffman-La Roche, 493 U.S. at 174.

Named Plaintiff requests the Court authorize the proposed Form of Notice and allow Named Plaintiff to provide notice of this action to all potential members of the class. Defendant expresses specific concerns over the time parameters of the notice period to potential collective action members and limitations on the members in the proposed collective. Defendant seeks to limit the potential collective action members to those similarly situated employees who worked for Allied between April 2022 and August 2023. (Def.'s Opp. Br. at 15.) This Court is not persuaded.

Contrary to Defendant's argument, it is immaterial that Named Plaintiff may have never worked with potential collective action members. Nothing in Defendant's certification suggests that the policy noted in the declaration of three prior employees, in which they were required to work before and after scheduled shifts and routinely worked in excess of forty hours per week without overtime, changed after Named Plaintiff, Mr. Fernandez, or Mr. Moskowitz had left. Indeed, Mr. McCormack asserts that Fueling Supervisors are paid annually and "may earn an additional bonus if they must work beyond their assigned 8-hour shift" but does not distinguish any eligible overtime pay. (McCormack Decl. ¶ 12.)

Furthermore, a three-year notice period through the date of conditional certification is proper. A collective action for non-named plaintiffs commences when he or she files a written consent, not when the complaint was filed. See 29 U.S.C. § 256(b). Moreover, under 29 U.S.C. § 255(a), a "willful violation" of the FLSA "may be commenced within three years after the cause of action accrued." Thus, as Named Plaintiff notes, courts in this jurisdiction have limited notice in FLSA collective actions to potential opt-in plaintiffs employed within three years of the date of conditional certification. See Gervasio v. Wawa Inc., No. 17-245, 2018 WL 385189, at *5 (D.N.J. Jan. 11, 2018); Porter v. Merrill Lynch Pierce Fenner & Smith, Inc., No. 17-8043, 2018 WL 5874094, at *4 (D.N.J. Nov. 9, 2018). The language of Named Plaintiff's proposed notice falls within this standard. The Court emphasizes that the motion before the Court is only one for conditional certification and arguments regarding the statute of limitations or equitable tolling will not be addressed on this motion. See Montero v. J.A. Alexander, Inc., No. 23-21679, 2024 WL 3912984, at *3 n.5 (D.N.J. Aug. 23, 2024); Joyce v. Colter Energy Servs. USA, Inc., No. 22-1367, 2024 WL 2794278, at *5 (W.D. Pa. May 31, 2024) ("[D]eterminations about whether the statute

11

of limitations or equitable tolling apply to any opt-in member's claims are merits-based matters that are not appropriate at this preliminary stage of the certification process.")

Named Plaintiff also argues that this Court should order Defendant to produce the "names, last known addresses, telephone numbers, and email addresses of all potential members of the FLSA Collective[.]" (D.E. No. 17 at 2.) Defendant has not objected to this request and the undersigned notes that courts have routinely ordered defendants to produce a list of potential class members to a plaintiff. See, e.g., Pearsall-Dineen, 27 F. Supp. 3d at 574; Gervasio, 2018 WL 385189, at *5-6; Essex v. Children's Place, Inc., No. 15-5621, 2016 WL 4435675, at *7 (D.N.J. Aug. 16, 2016). The Court grants Named Plaintiff's request to order Defendant to produce the names, last known addresses, and email addresses of potential collective group members but denies Named Plaintiff's request to order Defendant to produce telephone numbers for this group as Named Plaintiff has not shown why names, last known addresses, and email addresses would be insufficient in this matter.

As for the method of disseminating the Notice, the Court shall allow Named Plaintiff to issue notices to all potential members of the FLSA collective action by first-class mail and email, informing them of their right to opt-into the case and shall further permit an opt-in period of 90 days, starting from the date of the Court's grant of conditional certification. The Court further grants Named Plaintiff's request that Defendant post the Notice in conspicuous locations at Allied Aviation. See Covachuela v. Jersey Firestop, LLC, No. 20-8806, 2021 WL 1326985, at *4 (D.N.J. Apr. 9, 2021); Yang v. Taiji Oriental Spa NJ Corp., No. 22-617, 2023 WL 8469611, at *4 (D.N.J. Dec. 6, 2023). The Court denies Named Plaintiff's requests to send text messages and reminder notices, as he makes no arguments addressing why, in this particular action, an initial notice mailed and emailed to potential collective group members would be insufficient to advise them of this

lawsuit and their opportunity to opt in. See Clarke v. Flik Int'l Corp., No. 17-1915, 2018 WL 3930091, at *9 (D.N.J. Aug. 16, 2018).

## IV. CONCLUSION

For these reasons, Named Plaintiff's motion for conditional certification is **GRANTED**. Plaintiff's request to issue notice of this lawsuit to the proposed collective group is granted subject to the modifications outlined above. An appropriate Order will follow.

                                                     s/Stanley R. Chesler
                                       STANLEY R. CHESLER, U.S.D.J.

Dated: May 13, 2025